IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| US MAGNESIUM, LLC, a Delaware limited liability company,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>ATI TITANIUM LLC, a Delaware limited liability company; ALLEGHENY TECHNOLOGIES INCORPORATED, a Delaware corporation, and DOES 1-20,<br><br>    Defendants and Counter-claimant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:17-cv-923-DB<br><br>District Judge Dee Benson |

Before the Court are two Motions to Dismiss—one filed by Plaintiff and Counterclaim-Defendant US Magnesium, LLC ("US Mag") (Dkt. No. 108) and one filed by Defendant and Counter-Claimant ATI Titanium LLC ("ATI") (Dkt. No. 133)—as well as associated evidentiary objections and a motion for discovery. (Dkt. Nos. 151, 160, 168.) The Motions have been fully briefed by the parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

Facts

This action arises out of a Supply and Operating Agreement (the "Agreement") entered into by US Mag and ATI in September of 2006. The Agreement provided for a symbiotic relationship in which US Mag would produce raw magnesium, which it sold to ATI at a set price for the manufacture of titanium sponge. US Mag's magnesium production process required

magnesium chloride as input, which ATI's titanium sponge manufacturing process produced as a by-product. ATI provided magnesium chloride from its manufacturing process to US Mag for the manufacture of magnesium.

The companies operated neighboring plants pursuant to the Agreement for several years until mid-2016. The agreement contemplated a twenty-year term, subject to ATI's right to terminate its performance pursuant to an "Economic Force Majeure" provision. The Economic Force Majeure provision provided that ATI could "suspend its performance" under the Agreement if it obtained "a bona fide, good faith and arms' length written contract offer" to purchase titanium sponge for five years at a price 85% or below that of ATI's "variable costs to produce titanium sponge…." §11.2(a). The provision further provided that ATI could "suspend its performance under th[e] Agreement, including, without limitation, its purchase of Magnesium under th[e] Agreement, upon at least one hundred eighty (180) days' prior written notice to [US Mag]." *Id.* During the 180-day period, the parties were to "enter into good faith negotiations…to attempt to negotiate revised pricing for Magnesium" pursuant to the schedule set forth in the Agreement.

In a letter dated August 23, 2016, ATI wrote to US Mag "declaring an Economic Force Majeure pursuant to Section 11.2 of the Agreement…." (Dkt. No. 17 at ¶ 13.) ATI notified US Mag that it would suspend its performance 180 days following the letter. Shortly thereafter, during the 180-day period, ATI idled its plant. The parties engaged in some discussions during the 180-day period, but they disagreed on several points, including which auditor to use for the audit contemplated by the Agreement. Ultimately, their discussions were unsuccessful at resolving their dispute.

2

US Mag initially filed suit on October 12, 2016, which was removed to this court on November 11, 2016. That action was dismissed without prejudice to allow the parties to engage in mediation, as set forth in the Agreement. Following an unsuccessful mediation, ATI brought this action on August 15, 2017. (Dkt. No. 2.) On January 11, 2018, on motion of the parties, this action was consolidated with an action which was filed by US Mag in state court and removed to this court on August 29, 2017—2:17-cv-976. (Dkt. No. 39.) Subsequently, both parties amended their Complaint/ Counterclaim to include claims against the other's parent company. (Dkt. Nos. 100 and 117.)

ATI brought claims for intentional interference with contract and economic relations against the Renco Group ("Renco"), US Mag's parent company. (Dkt. No. 100.) ATI alleged that, on information and belief, Renco prevented US Mag from negotiating in good faith with ATI in order to force ATI into economic duress and purchase ATI at a steeply discounted price. (*Id.*)

US Mag brought claims against Allegheny Technologies Incorporated ("Allegheny"), ATI's parent company, under an alter ego or principal/agent theory, arguing that Allegheny was responsible for the actions of ATI. (Dkt. No. 117.) In support of its alter ego and principal/agent theory, US Mag alleged "commingling of business operations; common management and legal representation; sharing of headquarters and employees in Pittsburgh, Pennsylvania; non-arm's length transactions; consolidated summaries of operations and financial statements; absence of corporate records for ATI; a failure to follow corporate formalities on the part of ATI; and Allegheny's siphoning of funds from ATI, causing ATI to be (and remain) undercapitalized,

despite Allegheny's substantial earnings from the products produced at the Titanium Sponge Plant." (*Id.* at ¶ 4.)

Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, constitutes facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Rule 12(b)(6), the court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the Complaint, and any documents attached thereto, and any external documents that are referenced in the Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

*US Mag and Renco's Motion to Dismiss (Dkt. No. 108)*

In its Second Amended Counterclaim and Third-Party Complaint, ATI speculated that its pricing negotiations with US Mag broke down after US Mag communicated with its parent, Renco. (Dkt. No. 100 at ¶¶ 30-34.) ATI then alleged that the inference can be drawn that Renco interfered with the negotiations self-interestedly, and initiated suit in order to purchase ATI at a

reduced price. (*Id.* at ¶ 12. ) Even assuming that ATI's speculative allegations are true, they are insufficient to state a claim for intentional interference with contract or economic relations.

In response to a certified question from this court, the Utah Supreme Court recently clarified that, like the tort of intentional interference with economic relations, the tort of intentional interference with contract requires a showing of "improper means." *C.R. England v. Swift Transportation Company*, 2019 UT 8. To establish "improper means", a Plaintiff must show conduct of the Defendant that is "contrary to law, such as violations of statutes, regulations, . . . recognized common-law rules or the violation of an established standard of a trade or profession." *Id.*

ATI argues that it pleaded improper means by alleging (1) a breach of fiduciary duties and (2) the pursuit of unfounded litigation. First, ATI's argument that Renco breached fiduciary duties owed to US Mag, and that the breach constituted improper means with respect to ATI, is unsupported by law. None of the cases discussed in the parties' briefing support the theory that the breach of a fiduciary duty owed to a third party constitutes improper means under Utah law, or that ATI would have standing to assert such a claim. The court declines to expand the definition of improper means to include such conduct, as the Utah Supreme Court has consistently "defined improper means narrowly." *Id.* at ¶ 42.

Second, ATI's assertion that the pursuit of unfounded litigation constituted improper means is belied by the procedural history of this case. Although the original action brought by US Mag was dismissed, it was not with prejudice, but instead to allow the parties to participate in mediation as required by the Agreement. Furthermore, this court has already denied a motion for partial summary judgment brought by ATI. This action does not have any of the hallmarks of

"sham litigation," as alleged by ATI. Accordingly, participating in this action, which Renco is legally entitled to do, cannot constitute improper means. ATI has failed to allege improper means to support its claims against Renco. Accordingly, US Mag's Motion to Dismiss Renco is GRANTED.

*Allegheny's Motion to Dismiss (Dkt. No. 133)*

Allegheny moves to dismiss US Mag's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that Judge Stewart already ruled that the court did not have personal jurisdiction over Allegheny, and pursuant to Rule 12(b)(6), arguing that they are deficiently pled.

First, Judge Stewart's opinion dismissing the previous action to allow the parties to engage in mediation pursuant to the Agreement (Dkt. No. 133-1) does not have a preclusive effect here. Judge Stewart was primarily presented with whether the timing of the lawsuit was proper under the parties' agreement and repeatedly stated that his Memorandum Decision and Order was entered without prejudice. (Dkt. No. 133-1 at 9, 18, 19.) Furthermore, even in an instance where claims are dismissed for lack of personal jurisdiction and the court does not specify that its ruling is without prejudice, "suit may be brought again where a jurisdictional defect has been cured or loses its controlling force." *Eaton v. Weaver Mfg. Co.*, 582 F.2d 1250, 1256 (10th Cir. 1978). The court here has been presented with a different pleading and procedural posture and is not precluded from considering its jurisdiction and the action before it because of Judge Stewart's dismissal of similar claims without prejudice.

Having so determined, the court must decide whether it has personal jurisdiction over Allegheny. When, as in this case, a court considers a motion to dismiss "on the basis of the

complaint and affidavits," a plaintiff must "only make a *prima facie* showing of personal jurisdiction." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The plaintiff may make this prima facie showing by demonstrating by affidavit or other written materials, facts that if true would support jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Dudnikov*, 514 F.3d at 1070. In order to defeat the plaintiff's prima facie showing of personal jurisdiction, the moving defendant must present a compelling case demonstrating "that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Here, the court finds that US Mag has made a prima facie showing of personal jurisdiction, and ATI has failed to show other considerations that would render jurisdiction unreasonable. US Mag has alleged that Allegheny is an alter ego of ATI, so as to subject Allegheny to jurisdiction. Under Utah law, in order to establish that one corporate entity is the alter ego of another, a plaintiff must show: (1) "such unity of interest and ownership that the separate personalities of the corporation[s] . . . no longer exist" and (2) that to observe the corporate form would "sanction a fraud, promote injustice, or [cause] an inequitable result [to] follow." *Mun. Bldg. Auth. of Iron Cty. v. Lowder*, 711 P.2d 273, 278 (Utah 1985). US Mag has sufficiently pleaded both elements.

First, US Mag has sufficiently alleged a unity of interest and ownership between ATI and Allegheny. In its Amended Complaint, US Mag alleged that ATI did not maintain its own, separate financial records (Amended Complaint (Dkt. No. 117) at ¶¶ 93-98), ATI was a cost

7

center for which cash generation was realized through other entities owned by Allegheny (*id.* at ¶ 116), ATI was entirely dependent on Allegheny for any funding it obtained (*id.* at ¶¶ 116, 133), profits generated by ATI went to Allegheny (*id.* at ¶ 133), ATI did not maintain its own, separate corporate records or meeting minutes (*id.* at ¶ 125), many of ATI's corporate witnesses are actually officers or employees of Allegheny (*id.* at ¶ 119), Allegheny—not ATI—was the entity that voted to declare an Economic Force Majeure under the Agreement (*id.* at 72), and Allegheny—not ATI—was party to the offers or contracts that allegedly triggered the Economic Force Majeure. (*Id.* at 71, 120.) Accepted as true, those allegations demonstrate a unity of interest and ownership such that separate corporations no longer exist.

Second, US Mag has alleged that ATI and Allegheny have not maintained separate financial records and that ATI is undercapitalized. (*Id*. at ¶ 133.) Accepting those allegations as true, it would cause an inequitable result to dismiss Allegheny, leaving only the alleged "cost center"—ATI—to respond to this action. Accordingly, US Mag has sufficiently pleaded an alter ego theory to survive a motion to dismiss under Rule 12(b)(6) and to support personal jurisdiction under Rule 12(b)(2).

In their Objection, (Dkt. No. 160,) ATI and Allegheny dispute the assertions in the affidavit submitted by US Mag. Specifically, they dispute US Mag's characterization of the evidence produced by ATI and Allegheny to this point. On a Motion to Dismiss where the court relies on the Complaint and affidavits, the court must resolve all "factual disputes in the parties' affidavits … in plaintiffs' favor." *Dudnikov*, 514 F.3d at 1070. Accordingly, ATI and Allegheny's evidentiary objection is overruled at this time. And, in fairness, US Mag's evidentiary objection to ATI and Allegheny's affidavit (Dkt. No. 168) is overruled as well.

Conclusion

For the foregoing reasons, US Mag's Motion to Dismiss Renco (Dkt. No. 108) is hereby GRANTED and ATI's Motion to Dismiss Allegheny (Dkt. No. 133) is DENIED. The evidentiary objections (Dkt. Nos. 160 and 168) are OVERRULED at this time. US Mag's Motion for jurisdictional discovery (Dkt. No. 151) is hereby MOOT.

DATED this 19th day of April, 2019.

BY THE COURT:

Dee Benson
United States District Judge