Bryon J. Benevento (#05254)
Kimberly Neville (#09067)
Adam C. Buck (#12043)
**DORSEY & WHITNEY LLP**
111 South Main Street, Suite 2100
Salt Lake City, UT 84111-2176
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373
benevento.bryon@dorsey.com
neville.kimberly@dorsey.com
buck.adam@dorsey.com

*Attorneys for ATI Titanium LLC and Allegheny Technologies Incorporated*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| US MAGNESIUM, LLC, a Delaware limited liability company, | **DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF RICHARD HOFFMAN** |
| Plaintiff, | |
| vs. | **[FILED UNDER SEAL PURSUANT TO STIPULATED PROTECTIVE ORDER (DOCKET #51]** |
| ATI TITANIUM LLC, a Delaware limited liability company, ALLEGHENY TECHNOLOGIES INCORPORATED, a Delaware corporation, and DOES 1-20, | Civil No.  2:17-cv-00923-HCN-JCB |
| Defendants. | Judge Howard C. Nielson, Jr. |
| | Magistrate Judge Jared C. Bennett |
| ATI TITANIUM LLC, a Delaware limited liability company, | |
| Counterclaim Plaintiff, | REDACTED COPY |
| vs. | |
| US MAGNESIUM, LLC, a Delaware limited liability company, | |
| Counterclaim Defendant. | |

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................... 1

II.   STATEMENT OF FACTS ................................................................................. 2

    A.   Nature of the Dispute and US Mag's Claims ........................................... 2

    B.   Hoffman's Primary Expert Report Fails to Disclose Any Opinions Regarding
ATI's Declaration of an Economic Force Majeure and Relies on Inaccurate
Assumptions that Defy Actual Facts ........................................................ 5

    C.   Hoffman's "Rebuttal" Report. ............................................................... 11

III.   ARGUMENT ................................................................................................... 14

    A.   Hoffman's "Rebuttal" Opinions Regarding the Economic Force Majeure are
Untimely and Should Be Excluded ........................................................ 14

    B.   Mr. Hoffman's Opinion Does Not Fit the Facts of This Case Rendering His
Opinion Unreliable ................................................................................ 16

    C.   Hoffman's Alter Ego Opinion Should Be Excluded Because it Usurps the Role of
the Judge and Jury ................................................................................ 19

IV.   CONCLUSION ................................................................................................ 21

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Amari Co. v. Burgess,
  No. 07 C 01425, 2012 U.S. Dist. LEXIS 157229 (N.D. Ill. Nov. 2, 2012) ............................20

ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.,
  Case No. 60500297 (Utah 3d Dist. Jan. 3, 2011) (Ex. N) .....................................................19

Barr v. C.R. Eng.,
  2019 U.S. Dist. LEXIS 226638 (D. Wyo. Dec. 5, 2019).......................................................16

Bitler v. A.O. Smith Corp.,
  400 F.3d 1227 (10th Cir. 2005) .............................................................................................17

Cal. College Inc. v. UCN Inc.,
  2019 UT App 39, 440 P.3d 825 .............................................................................................19

Craig v. Xlear, Inc.,
  2:16-cv-392-DB-EJF, 2019 U.S. Dist. LEXIS 39123 (D. Utah March 11,
  2019) ......................................................................................................................................20

Crowley v. Chait,
  322 F. Supp. 2d 530 (D. N.J. 2004) .......................................................................................15

Emerick v. U.S. Suzuki Motor Corp.,
  750 F.2d 19 (3d. Cir. 1984).....................................................................................................15

First Am. Title Ins. Co. v. Northwest Title Ins. Agency, LLC,
  Case No. 15-cv-00229, 2016 U.S. Dist. LEXIS 168870 (D. Utah Nov. 26,
  2016) ......................................................................................................................................19

Foster v. USIC Locating Servs., LLC,
  2018 U.S. Dist. LEXIS 139648 (D. Kan. Aug. 17, 2018) .....................................................15

Fowers Fruit Ranch, LC v. Bio Tech Nutrients, LLC,
  Case No. 11-cv-00105, 2015 US Dist. LEXIS 178450 (D. Utah Oct. 30, 2015) ...................19

Ho v. Michelin N. Am., Inc.,
  520 F. App'x 658 (10th Cir. 2013) .......................................................................................17

Karns v. Emerson Elec. Co.,
  817 F.2d 1452 (10th Cir. 1987) ............................................................................................20

Kumho Tire Co. v. Carmichael,
    526 U.S. 137 (1999) .................................................................................17

Mitchell v. Gencorp Inc.,
    165 F.3d 778 (10th Cir. 1999) ................................................................17

Oklahoma v. Tyson Foods, Inc.,
    2009 U.S. Dist. LEXIS 33944 (N.D. Okla. April 17, 2009) .....................15

Okland Oil Co. v. Conoco Inc.,
    144 F.3d 1308 (10th Cir. 1998) ...............................................................19

Pereira v. Cogan,
    281 B.R. 194 (Bankr. S.D.N.Y. 2002) ...................................................20

Pioneer Centres Holding Co. Employee Stock Ownership Plan & Tr. v. Alerus
    Fin., N.A.,
    858 F.3d 1324 (10th Cir. 2017) ...............................................................20

Salt Lake City Corp. v. ERM-West, Inc.,
    Case ..........................................................................................................19

SIL-FLO, Inc. v. SFHC, Inc.,
    917 F.2d 1507 (10th Cir. 1990) ...............................................................15

Specht v. Jensen,
    853 F.2d 805 (10th Cir. 1988) .................................................................20

Stephenson v. Wyeth LLC,
    Case No. 04-2312-CM, 2011 U.S. Dist. LEXIS 119013 (D. Kan. Oct. 14,
    2011) .........................................................................................................15

U.S. v. Nacchio,
    555 F.3d 1234 (10th Cir. 2009) ...............................................................17

US Magnesium, LLC v. ATI Titanium LLC,
    Case No. 160301645 ..................................................................................4

US Magnesium, LLC v. ATI Titanium LLC, et al.,
    Case No. 2:16-cv-01158 ...........................................5, 8, 9, 10, 11, 13

**Other Authorities**

F.R.C.P. 26(a)(2)(D) .......................................................................................15

Federal Rules of Civil Procedure Rule 26 ...................................................1, 15

Federal Rules of Civil Procedure Rule 702 ....................................................................16

Federal Rules of Evidence Rule 702....................................................................1, 17, 20

Rule 704 ....................................................................................................................20

## MOTION TO EXCLUDE TESTIMONY OF RICHARD HOFFMAN

Pursuant to Rule 702 of the Federal Rules of Evidence and Rule 26 of the Federal Rules of Civil Procedure, Defendants ATI Titanium, LLC ("ATI") and Allegheny Technologies Incorporated ("Allegheny") move the Court for an order excluding certain expert opinions and testimony offered by the Plaintiff's expert, Richard Hoffman.  The basis for this motion is that:

    (i)    Mr. Hoffman's economic force majeure opinions were not timely disclosed, as his client carries the burden of proof on this issue and failed to proffer an affirmative expert report prior to the Court's February 25, 2020 deadline;

    (ii)    Mr. Hoffman's economic analysis does not fit the facts of the case, as he ignores actual facts that undermine his opinion while using inaccurate economic assumptions that improperly inflate his client's position; and

    (iii)    Mr. Hoffman's alter ego opinions improperly usurp the role of the judge and jury by opining on legal issues and ultimate conclusions to be resolved by the trier-of-fact.

## MEMORANDUM IN SUPPORT OF MOTION

## I.  INTRODUCTION

This Court should exclude the opinions and testimony of Richard Hoffman because his opinions are untimely, unreliable, and impermissible legal conclusions.  As discussed below, US Mag has proffered Mr. Hoffman as expert witness to opine on a host of topics, including: (i) whether ATI was in an economic force majeure; (ii) the amount of damages purportedly sustained by US Mag as a result of ATI's alleged breach of contract; and (iii) the purported alter ego relationship between ATI and Allegheny.  Each of these opinions is flawed for multiple reasons:

First, Hoffman's economic force majeure opinion is untimely, and should be excluded. US Mag has sued ATI for breach of contract, claiming that ATI wrongfully declared an economic force majeure and that its declaration was an outright "sham."  As the party suing for breach of contract, US Mag necessarily carries the burden of proving all elements of its claims in its case-

in-chief, including its allegations that ATI's declaration of the economic force majeure was improper.  Despite having the burden, US Mag provided <u>no</u> affirmative expert testimony on this issue, choosing instead, to lie-in-wait and produce a "rebuttal" report at the eleventh hour. Hoffman's economic force majeure opinions and analysis are late, and accordingly, he should be precluded from offering any economic force majeure opinions in US Mag's case-in-chief.

Second, Hoffman's economic analysis of US Mag's alleged damages, as well as his tardy analysis of ATI's economic force majeure, are inherently unreliable and fail to "fit" the facts of the case.  Hoffman bases his opinions on extraordinary assumptions that artificially inflate US Mag's economic contentions while ignoring empirical facts.  And Hoffman's motive is telling: if he is constrained by reality, the actual evidence would result in only a modest award of damages to his client – or perhaps <u>no</u> damages at all.  Thus, Hoffman chooses to be ignorant of the actual facts of the case, rendering his opinions both inadmissible and highly misleading to the jury.

Finally, Hoffman's alter ego opinion should be excluded because it is an improper legal conclusion that usurps the role of the judge and jury.  In this regard, US Mag uses Hoffman as a conduit for its closing argument, having him opine as to requirements under the law and apply "facts" to that legal standard – all while ignoring evidence that undercuts his client's position.  This is not an appropriate use of expert testimony, and the opinion should be excluded at trial.

For these reasons, the Court should exclude or substantially limit Hoffman's testimony.

## II.   STATEMENT OF FACTS

### A.   Nature of the Dispute and US Mag's Claims.

This case is a contract dispute arising out a Supply & Operating Agreement for the sale of magnesium.  ATI is the owner of a titanium sponge plant located in Rowley, Utah.  In 2006, ATI

entered into its agreement with US Mag in which ATI agreed to purchase magnesium from US Mag for use in manufacturing titanium sponge. ATI invested significant resources into the business opportunity – it expended more than $500,000,000 to build, equip, staff, and certify its titanium sponge plant for its manufacturing needs, and also funded millions of dollars in equipment and infrastructure improvements on US Mag's neighboring site to enable US Mag to meet the magnesium demand. See Docket #17 at ¶¶ 6-9.

Both parties to the Agreement were sophisticated business entities, who knew and understood that their business arrangement could be subject to certain risks. Thus, ATI specifically negotiated for the right to cease performance under the Agreement. See Supply and Operating Agreement (Ex. A) at § 11.2(a). US Mag, in turn, similarly negotiated for its own protections, such as minimum pricing and caps to guard against market volatility. Id. at § 2.1.

The process of determining whether an economic force majeure has been triggered is inherently complex, as it involves an analysis of ATI's expenses, variable costs, materials, alternative supply offers, and other elements of production. Accordingly, the parties agreed that US Mag would have the right to have an independent accounting firm audit ATI's evidence of an economic force majeure in order to confirm whether ATI's declaration was valid. Id. at § 11.3.

Not surprisingly, the very operating conditions that the parties anticipated – and planned for in their contract – actually came to fruition approximately ten years after the Agreement was executed. Even US Mag recognized the substantial change in the titanium sponge market. See Ex. B (US Mag May 2016 Management Report) at 30503. Indeed, US Mag was well-aware of the market conditions that ATI was experiencing, and in fact, had independently recognized the "uphill

battle" that ATI was facing.  An email from Susan Slade, US Mag's Vice-President of Marketing, stated:



See July 6, 2016 Email, USM005922 (Ex. C).

Likewise, US Mag had also internally analyzed the market conditions and acknowledged that ATI may need to consider purchasing sponge or idling its Rowley facility in the trends continued.  Another email authored by Ms. Slade stated:



See May 9, 2016 Email (Ex. D).

On August 23, 2016, ATI sent US Mag a letter invoking the Economic Force Majeure provision of the Agreement, and notifying US Mag that it will be suspending its performance under the Agreement in 180 days.  See Ex. E.  US Mag responded to ATI's letter on August 31, 2016, and provided notice of its intent to invoke Section 11.2 and 11.3's audit procedures.  See Ex. F. The parties, however, were unable to agree upon an auditor, with each claiming that other party's nominees were inappropriate for various reasons.  US Mag then filed suit on October 12, 2016. See US Magnesium, LLC v. ATI Titanium LLC, Case No. 160301645, Third Judicial District Court, County of Tooele, State of Utah.  That case was removed to federal court, and dismissed

by Judge Ted Stewart.  See US Magnesium, LLC v. ATI Titanium LLC, et al., Case No. 2:16-cv-01158 at Docket #54.

In this case, US Mag claims that ATI breached its Supply & Operating Agreement by "wrongfully declaring an Economic Force Majeure" and that "the requirements of an EFM were not satisfied…."  See Second Amended Compl. (Docket #231) at ¶ 144.  Importantly, US Mag announced its position that ATI had improperly declared an economic force majeure to this Court on multiple occasions, bolding stating:

> *Manifestly, ATI's purported invocation of the EFM was a sham.*

See Docket #33 at 9.

### B.   Hoffman's Primary Expert Report Fails to Disclose Any Opinions Regarding ATI's Declaration of an Economic Force Majeure and Relies on Inaccurate Assumptions that Defy Actual Facts.

Under the Court's Scheduling Order, the parties were required to exchange their opening expert reports – which were to address issues upon which they bear the burden of proof – on or before February 25, 2020.  See Scheduling Order (Docket 228) at ¶ 2.  US Mag designated Richard Hoffman, a local forensic accountant on February 25, 2020.

Notably, Mr. Hoffman's affirmative expert report did not address ATI's declaration of an economic force majeure, or provide any analysis to support US Mag's contention that the economic force majeure was not met as alleged in US Mag's breach of contract claim.  Rather, Mr. Hoffman's report offered opinions regarding: (1) US Mag's alleged damages, which he estimates to be $142 million; and (2) the alleged alter ego relationship between ATI and Allegheny.  See Hoffman Report (Ex. G).

**Hoffman's Damage Analysis**

Hoffman's damage analysis is fraught with aggressive assumptions that contradict actual facts. For example, Hoffman assumes that US Mag's lost profits should be calculated for the entire 20-year default term of the Supply & Operating Agreement – even though US Mag informed ATI, in writing, that it will not supply any additional magnesium or otherwise perform under the Agreement after December 2016. <u>See</u> Ex. H-I. In other words, Hoffman approaches the case as if ATI has defaulted on a "note" or payment obligation, by allowing his client to claim the entire amount that would be paid under the duration of the Agreement without having to tender any product and without giving ATI any opportunity to cure or mitigate the alleged loss.

Hoffman further assumes that





[1] ATI has eliminated objections from any block quotes in the interest of brevity.  The transcript, however, is included in the Defendants' appendix in the event any evidentiary issues are raised.



Hoffman also disregards US Mag's own statements to the International Trade Commission, in which US Mag petitioned the government for tariffs and other protections against falling international magnesium prices.  Among other things, US Mag's representatives have informed the federal government that the company is "in a fight for survival" brought about by "price declines in [its] merchant magnesium business" and that it "the company may not survive if orders

are not imposed." <u>See</u> Nov. 14. 2018 ITC Hearing Transcript (Ex. K) at 9, 23-26. [2]  Importantly,

the ITC has <u>denied</u> US Mag's petition for pricing relief – a fact that Hoffman again chooses to

ignore in assessing future pricing.  <u>See</u> Hoffman Transcript (Ex. J) at 67-68.

     Hoffman also takes aggressive liberties with the factual record when assessing the discount

rates to be applied to his damages calculation.  In particular, Hoffman uses a discount rate of only



[2] US Mag's representatives made clear in their ITC testimony that ATI's conduct has nothing to
do with magnesium pricing declines or financial hardship caused by the magnesium market
decline.  US Mag's representative clearly stated:

    The closure of ATI's facility is certainly not the cause of the price declines in our
    merchant market magnesium business and accompany declines in profitability that
    affected us in 2017 and 2018.

<u>See</u> 11/21/19 ITC Transcript at 34-35 (Ex. L).



Id. at 99-100.

Hoffman also fails to consider the possibility (or even take a discount for the possibility) that US Mag may cease operations or fail to perform during the 20-year contract term, even though his client is telling government agencies "it may soon be forced out of business."  See 11/14/18 ITC Transcript (Ex. K) at 11-12. ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████

### Hoffman's Alter Ego Opinions

Hoffman's February 25, 2020 affirmative report also opines that ATI is an alter ego Allegheny.  In this section of his report, Hoffman identifies a number of factors used by Delaware and Utah courts to evaluate alter ego claims, opining that: "In my view, the evidence pertinent to the above alter ego factors is particularly strong in this case."  See Hoffman Report (Ex. G) at 22. Hoffman then proceeds to argue the evidence from his point of view, attempting to make the legal case on this issue.  Id.

As with his prior opinions, Hoffman willfully ignores facts that would undercut his opinion. For example, Hoffman argues that ATI was undercapitalized, citing a $1000 opening capital contribution cited in the company's Operating Agreement.  Hoffman, however, ignores that ATI also has other assets appearing on its balance sheet, including its plant, equipment, and land upon

which they reside, and dismisses those substantial assets. <u>Id.</u> at 39. Likewise, Hoffman disregards the fact that ATI has an Operating Agreement and financial statements, which suggest that the company is observing at least some corporate formalities with we regard to organizational documents and record keeping.



    **C.**      **Hoffman's "Rebuttal" Report.**

    As stated earlier, Hoffman did not issue an affirmative expert report regarding ATI's declaration of an economic force majeure prior to the Court's February 25, 2020 deadline to exchange reports on topics upon which parties have the burden of proof. Consequently, US Mag has provided no expert testimony to support its claim that "the requirements of an EFM were not satisfied…." <u>See</u> Second Amended Compl. (Docket #231) at ¶ 144. ATI, however, provided a

timely expert report from its retained auditor, Deloitte, which confirms ATI's declaration of the economic force majeure.

On July 1, 2020, Hoffman issued a second, "rebuttal" report, which provides four new opinions. See Rebuttal Report (Ex. M) at p.5. Although the fourth item in Hoffman's rebuttal report criticizes Deloitte's analysis, the other three opinions attempt to analyze whether ATI was in an economic force majeure as of August 24, 2016. Id. In these three opinions, Hoffman takes certain preliminary calculations that were prepared by ATI's finance team in 2016 (which conclude that the company was in an economic force majeure) and "modifies" those calculations to reach a conclusion that ATI purportedly does not meeting the requirements of the economic force majeure.

Critically, Hoffman fails to identify any reason why he could not have issued his three economic force majeure opinions prior to the Court's February 25, 2020 deadline. The ATI documents that he relies on for these "rebuttal" opinions were produced during fact discovery, and he does not identify any new events or information produced after the Court's deadline for affirmative expert disclosures that were pertinent to his analysis. Hoffman stated:



See Hoffman Transcript (Ex. J) at 118-119.

As with his prior report, Hoffman makes certain economic assumptions that benefit his client, but do not conform to the actual facts. For example,





### III.    ARGUMENT

    A.    **Hoffman's "Rebuttal" Opinions Regarding the Economic Force Majeure are Untimely and Should Be Excluded.**

The Court should exclude Mr. Hoffman's "rebuttal" testimony regarding ATI's declaration of economic force majeure because his new affirmative opinions are untimely.  US Mag has affirmatively pled that ATI's declaration of the economic force majeure was improper, and it seeks a startling $142 million for this alleged breach of contract.  <u>See</u> Second Am. Compl. at ¶ 144.  As the party alleging breach, US Mag bears the burden of demonstrating that breach, and it was required to disclose any expert testimony on this issue before February 25, 2020.  US Mag failed

to meet this deadline, and waited for more than four months to designate a putative expert on the topic. This was too late.

Rule 26 states that expert disclosures must be made "at the times and in the sequence the court orders." F.R.C.P. 26(a)(2)(D). It is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof. Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22 (3d. Cir. 1984). Thus, "Courts will disallow the use of a rebuttal expert to introduce evidence more properly a part of a party's case-in-chief." Stephenson v. Wyeth LLC, Case No. 04-2312-CM, 2011 U.S. Dist. LEXIS 119013, *4 (D. Kan. Oct. 14, 2011) (citing SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1515 (10th Cir. 1990)); see also Oklahoma v. Tyson Foods, Inc., 2009 U.S. Dist. LEXIS 33944, *17 (N.D. Okla. April 17, 2009) ("Rebuttal is not 'an opportunity for the correction of any oversights in the plaintiff's case in chief.'") (quoting Crowley v. Chait, 322 F. Supp. 2d 530, 550 (D. N.J. 2004)).

Here, Mr. Hoffman's rebuttal report is clearly untimely and should have been presented as part of US Mag's affirmative disclosure obligation. US Mag has alleged that ATI breached its contract by improperly declaring an economic force majeure, and it was obligated to present its supporting testimony on issues upon which it carries the burden. Hoffman concedes that there have been no new developments since the original disclosure deadline that affected his analysis, and he offers no excuse for failing to timely serve his opinions. ATI is prejudiced by the late disclosure, as it has no opportunity to issue a rebuttal against these new opinions. And the remedy under federal law is clear – the new opinion should be excluded. See, e.g., Foster v. USIC Locating Servs., LLC, 2018 U.S. Dist. LEXIS 139648, *8 (D. Kan. Aug. 17, 2018) ("Advancing a new legal

theory through a rebuttal expert before the discovery deadline, 'subverts the expert disclosure process,'" and exclusion is therefore proper.); <u>Barr v. C.R. Eng.</u>, 2019 U.S. Dist. LEXIS 226638, *4 (D. Wyo. Dec. 5, 2019) ("Witnesses designated as rebuttal experts . . . may not present testimony that could be offered as part of the party's case-in-chief.").

Under these circumstances, US Mag should not be permitted to use Mr. Hoffman's new rebuttal opinions regarding ATI's declaration of an economic force majeure in its case-in-chief at trial as the opinions was not timely disclosed.  US Mag made a strategic decision to hold this opinion back even though it is the basis of its breach of contract claim – and its decision to lie-in-wait has consequences.  Accordingly, US Mag should be held to its "rebuttal" designation, and be barred from using its rebuttal opinions in its case-in-chief.[3]

**B.      Mr. Hoffman's Opinion Does Not Fit the Facts of This Case Rendering His Opinion Unreliable.**

This Court should separately exclude Hoffman's opinions because they are unreliable and do not fit the facts of the case.  Rule 702 of the Federal Rules of Civil Procedure provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)      the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)      the testimony is based on sufficient facts or data;

(c)      the testimony is the product of reliable principles and methods; and

---

[3]      To be clear, ATI has no issue with the timeliness of Hoffman's fourth opinion in his rebuttal report, which attempts to rebut certain opinions offered by ATI's retained auditor, Deloitte.  Hoffman's criticisms of Deloitte are true rebuttal and may be offered *in US Mag's rebuttal case*.  US Mag should not, however, be permitted to sidestep the rules and present this rebuttal opinion in its case-and-chief.

(d)      the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

The party offering expert opinion has the burden of satisfying Rule 702.  U.S. v. Nacchio, 555 F.3d 1234, 1236 (10th Cir. 2009).  Thus, a proponent "must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficient satisfy Rule 702's reliability requirements."  Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1233 (10th Cir. 2005).  In addition, the rule imposes a gatekeeping duty upon the trial court, requiring judges to "determine whether the testimony has a reliable bases in the knowledge and expertise of the relevant discipline."  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999).  The goal is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Id. at 152.

In Daubert v. Merrell Dow Pharmaceuticals, the Supreme Court further explained that expert testimony must not just be based upon a reliable methodology, but must also "fit the facts of the case." 509 U.S. 579, 591 (1993).  When the facts do not fit, the "Court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  Mitchell v. Gencorp Inc., 165 F.3d 778, 782 (10th Cir. 1999).  Likewise, when the "conclusion simply does not follow from the data, a district court is free to determine that an impermissible analytical gap exists between premises and conclusion."  Ho v. Michelin N. Am., Inc., 520 F. App'x 658, 663 (10th Cir. 2013).

Here, Hoffman's economic assumptions and damage calculations do not meet the "fit" component of Daubert and should be excluded at trial.  As discussed above, Hoffman has created

a damages scenario that does not conform to the actual known facts or the data presented in the case. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

Importantly, Hoffman has previously been criticized by other courts for doing the exact same thing he is doing in this case – artificially inflating lost profit calculations through aggressive and unsupported assumptions.  Indeed, Hoffman was previously excluded in a Utah state court case in which he attempted to calculate 20 years of lost profits using discounts and growth rates

that were not applicable to the underlying facts, and which potentially boosted his client's alleged damages by $99,000,000.   See ASC Utah, Inc. v. Wolf Mountain Resorts, L.C., Case No. 60500297 (Utah 3d Dist. Jan. 3, 2011) (Ex. N) at 6.  Numerous other cases reflect similar criticisms of his methodology.[4]

Although Hoffman's over-aggressive assumptions may boost his client's damage figure, they do not fit the facts of the case and are not the type of analysis that would be used outside of a courtroom.  More importantly, Hoffman's opinion will be materially misleading to the jury, as the jury will be left to speculate as the appropriate measure of damages against a backdrop of Hoffman's skewed numbers as their starting point.  US Mag made the strategic decision to go for more than what the law reasonably allows when it asked Hoffman to make these aggressive damage assumptions, and it has done so at its own peril.  Accordingly, the Court should exercise its gate-keeping function, and exclude these material flawed opinions.

**C.     Hoffman's Alter Ego Opinion Should Be Excluded Because it Usurps the Role of the Judge and Jury.**

Finally, Mr. Hoffman's alter ego opinions should be excluded because they are improper conclusions of law that are not admissible at trial.  The Tenth Circuit has expressly prohibited an expert witness from "stat[ing] his or her opinion as to legal standards" and from "stat[ing] legal conclusions drawn by applying the law to the facts." Okland Oil Co. v. Conoco Inc., 144 F.3d 1308, 1328 (10th Cir. 1998); see also Craig v. Xlear, Inc., 2:16-cv-392-DB-EJF, 2019 U.S. Dist.

---

[4] See Cal. College Inc. v. UCN Inc., 2019 UT App 39, 440 P.3d 825; First Am. Title Ins. Co. v. Northwest Title Ins. Agency, LLC, Case No. 15-cv-00229, 2016 U.S. Dist. LEXIS 168870 (D. Utah Nov. 26, 2016); Fowers Fruit Ranch, LC v. Bio Tech Nutrients, LLC, Case No. 11-cv-00105, 2015 US Dist. LEXIS 178450 (D. Utah Oct. 30, 2015); Salt Lake City Corp. v. ERM-West, Inc., Case no. 11-cv-1174, 2016 U.S. Dist. LEXIS 15959 (D. Utah Feb. 9, 2016).

LEXIS 39123, *10 (D. Utah March 11, 2019) (citing <u>Specht v. Jensen</u>, 853 F.2d 805, 808 (10th Cir. 1988) ("As the Tenth Circuit has held, Rule 704 permits testimony on ultimate factual questions but does not permit an expert to opine on ultimate legal questions.").

Such testimony is prohibited because it does "not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." <u>Pioneer Centres Holding Co.</u> <u>Employee Stock Ownership Plan & Tr. v. Alerus Fin., N.A.</u>, 858 F.3d 1324, 1342 (10th Cir. 2017). Courts prohibit such testimony so that the jury will not be "prevailed upon to abdicate its function or responsibility for reaching an independent judgment on the ultimate issues in the case." <u>Karns</u> <u>v. Emerson Elec. Co.</u>, 817 F.2d 1452, 1459 (10th Cir. 1987); <u>see</u> <u>also</u> <u>Craig v. Xlear, Inc.</u>, 2:16-cv-392-DB-EJF, 2019 U.S. Dist. LEXIS 39123, *13–14 (citing <u>Specht v. Jensen</u>, 853 F.2d 805 (10th Cir. 1988) ("In addition, even if [the expert] bases his conclusion on his own 'definition' of the term, this would confuse the jury. The jury may not know whether to believe the judge's instructions concerning the law over [the expert's] 'expert definition,' and it may not know how to reconcile the differences between the two.").

In the context of alter ego claims, courts have prohibited expert testimony (1) that purports to instruct the jury with respect to the legal requirements of an alter ego claim, <u>see</u> <u>Pereira v. Cogan</u>, 281 B.R. 194, 199–200 (Bankr. S.D.N.Y. 2002) (preserving defendants' right to object to alter ego expert's testimony regarding a legal requirement at trial and striking an expert report's definition of the term alter ego because the responsibility to instruct the jury resides strictly with the Court); or (2) that applies the alter ego doctrine as reserved for the jury, <u>see</u> <u>Amari Co. v. Burgess</u>, No. 07 C 01425, 2012 U.S. Dist. LEXIS 157229, * 47 (N.D. Ill. Nov. 2, 2012) (citing Rules 702 and 704 in support of its conclusion an expert's "thoughts on the proper application of the alter ego doctrine

are well beyond the realm of valid expert opinion" and that "[i]t is the province of the fact-finder, not these so-called experts, to determine whether Plaintiffs have viable claims").

Mr. Hoffman's testimony instructs the jury with respect to the proper application of the law to the facts and draws the ultimate legal conclusion – that ATI Titanium is Allegheny's alter ego.  His testimony is packaged as a closing argument, essentially allowing him to comment on documents and evidence that he did not prepare and that he would not have foundation to discuss if stripped of his expert cloak.  Although US Mag's counsel is certainly free to discuss any evidence with appropriate fact witnesses, it is not permitted to use an expert as conduit for a legal arguments and conclusions.  This invades the province of the judge and jury, and should be excluded.

## IV.   CONCLUSION

For the reasons set forth above, the Court should exclude or substantially limit Mr. Hoffman's testimony at trial.

DATED this 1st day of October, 2020.

DORSEY & WHITNEY LLP

By:   */s/ Bryon J. Benevento*
       Bryon J. Benevento
       Kimberly Neville
       Adam C. Buck
       *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October 2020, a copy of the foregoing was served upon the persons named below via email.

Richard D. Burbidge
rburbidge@burbidgemitchell.com
Carolyn LeDuc
cleduc@burbidgemitchell.com
Beau Burbidge
beau@burbidgemitchell.com
BURBIDGE MITCHELL
215 South State Street, Suite 920
Salt Lake City, Utah 84111

*/s/ Trudi Davis*
Trudi Davis, Legal Assistant

22