**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **U.S. MAGNESIUM, LLC, a Delaware limited liability company,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:17-cv-00923-HCN-JCB** |
| **ATI TITANIUM, LLC, a Delaware limited liability company; ALLEGHENY TECHNOLOGIES, INC., a Delaware Corporation; and DOES 1-220,** | **District Judge Howard C. Nielson, Jr.** |
| | **Magistrate Judge Jared C. Bennett** |
| **Defendants.** | |

The late Judge Dee Benson originally referred this case to Magistrate Judge Paul M. Warner under 28 U.S.C. § 636(b)(1)(A).[1] Because of Judge Benson's untimely passing, this case is now before Judge Howard C. Nielson, Jr., and due to Judge Warner's retirement, this case is now referred to Magistrate Judge Jared C. Bennett. This Memorandum Decision and Order addresses three motions: ECF Nos. 318, 327, and 333. Each motion seeks to exclude expert testimony under Fed. R. Evid. 702. The court held a hearing on the motions on January 13, 2021 and, at the conclusion of the hearing, took the matter under advisement. After considering the parties' memoranda, the evidence attached thereto, the relevant law, and the parties' oral arguments, this court renders the following Memorandum Decision and Order. For the reasons

---

[1] ECF No. 63.

set forth below: (1) Defendants ATI Titanium, LLC and Allegheny Technologies, Inc.'s

(collectively, "ATI") Motion to Exclude Richard Hoffman[2] is GRANTED IN PART and

DENIED IN PART; (2) Plaintiff U.S. Magnesium, LLC's ("USMG") Motion to Exclude Clarke

Nelson[3] is DENIED; and (3) USMG's Motion to Exclude Steven F. Stanton[4] is DENIED.

## BACKGROUND

USMG is a producer and supplier of magnesium, and ATI operates a titanium sponge

manufacturing facility, which uses magnesium in its production process. This action arises out of

a Supply and Operating Agreement ("Agreement") that the parties entered in September 2006. In

the Agreement, ATI agreed to purchase magnesium from USMG, and USMG agreed to sell

magnesium to ATI at the price as determined by the parameters set forth in the Agreement. The

parties describe their relationship as "symbiotic" in that ATI's titanium sponge manufacturing

process would produce magnesium chloride, which USMG would use to produce magnesium to

sell to ATI. The Agreement contemplated a twenty-year term, and the parties operated

neighboring plants in Rowley, Utah until mid-2016 when ATI invoked the Agreement's

Economic Force Majeure ("EFM") provision to suspend performance.

---

[2] ECF No. 318.

[3] ECF No. 333.

[4] ECF No. 327.

This action eventually followed. USMG asserted claims for anticipatory and material breach of contract against ATI.[5] In turn, ATI asserted counterclaims for breach of contract, breach of the implied covenant of good faith, and repudiation against USMG.[6]

After an extensive discovery period, the parties submitted motions for summary judgment.[7] Along with the parties' respective summary judgment motions, both parties seek to exclude expert testimony under Fed. R. Evid. 702. Specifically, ATI seeks to exclude Mr. Hoffman[8] from providing testimony on damages and serving as a rebuttal expert on EFM. Likewise, USMG seeks to exclude opinions from Mr. Nelson,[9] which seek to rebut Mr. Hoffman's testimony, and from Mr. Stanton, which contend that ATI met the requirements of EFM.[10] Following an explanation of the legal principles that govern the court's analysis of these motions, the court discusses each parties' respective requests to exclude the testimony of Mr. Hoffman, Mr. Nelson, and Mr. Clark in turn below.

## LEGAL BACKGROUND

Expert testimony frequently is a crucial part of establishing a claim or defense. However, to provide testimony, an expert must be qualified, and his/her testimony must rest "on reliable

---

[5] ECF No. 233.

[6] ECF No. 238.

[7] ECF Nos. 314, 317.

[8] ECF No. 318.

[9] ECF No. 333.

[10] ECF No. 327.

foundation" that is "relevant to the task at hand." Fed. R. Evid. 702. Rule 702 allows an expert

"by knowledge, skill, experience, training, or education" to testify "in the form of an opinion or

otherwise" if:

> (a) the expert's scientific, technical, or other specialized knowledge
> will help the trier of fact to understand the evidence or to determine
> a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> and
> (d) the expert has reliably applied the principles and methods to the
> facts of the case.[11]

The advisory committee notes accompanying the 2000 amendments to Rule 702 expound upon

factors the court should consider to the extent applicable and provide extensive guidance for

assessing reliability.[12] Specifically, this commentary provides that proponents of expert

testimony bear the burden of establishing its admissibility but

> do not have to demonstrate to the judge by a preponderance of the evidence
> that the assessments of their experts are *correct*, they only have to demonstrate
> by a preponderance of evidence that their opinions are *reliable* [because]
> evidentiary requirement of reliability is lower than the merits standard of
> correctness.[13]

Because "reliability" instead of "correctness" is the standard for assessing expert testimony

under Rule 702, "[v]igorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky

---

[11] Fed. R. Evid. 702.

[12] Fed. R. Evid. 702 advisory committee's notes to 2000 amendment.

[13] Fed. R. Evid. 702 advisory committee's note to 2000 amendment (emphasis added).

but admissible evidence."[14] Thus, under Rule 702, the question is not whether the proposed

expert testimony is correct or even shaky; it is whether the testimony is reliable or unreliable.



If the court determines that the proffered expert testimony is "unreliable," then it is

inadmissible. However, if the court deems the expert testimony "reliable," then the expert

testimony is subjected to the other requirements in the Federal Rules of Evidence to determine

admissibility.[15] Once the reliable expert evidence is deemed admissible under the other Federal

---

[14] Fed. R. Evid. 702 advisory committee's note to 2000 amendment (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)).

[15] Even if an expert's testimony is deemed "reliable" under Rule 702, a subsequent legal ruling from the court can render the expert's testimony irrelevant under Fed. R. Evid. 403. For example, if the court ruled as a matter of law that damages were limited to a shorter period than an expert calculated, a party would be able to move under Rule 403 to exclude the portion of the expert opinion that conflicts with the court's legal ruling on the grounds that the conflicting opinion confuses the issues and is unduly prejudicial. Additionally, even if the expert's report is "reliable," it would likely be excluded from evidence as hearsay under Rule 802. Thus, "reliable evidence" does not necessarily equal "admissible evidence" whereas "unreliable evidence" necessarily equals "inadmissible evidence."

Rules of Evidence, the fact finder is free to assess where along the weight spectrum of "correct" and "reliable" the expert evidence falls. Even though expert evidence may be reliable and otherwise admissible, a fact finder may find it so shaky that it warrants little to no weight.

However, as shown in the visual aid above, the court's focus in deciding Rule 702 motions is narrow because instead of assessing whether the fact finder will give the expert evidence any weight, the court focuses solely on which side of the "Reliable/Unreliable" line the expert evidence falls. In making this determination, the court relies on the factors stated in Fed. R. Evid. 702, the additional factors contained in the 2000 advisory committee's note, and the court's broad discretion.[16]

Besides providing what a court may consider in determining the narrow question of "Reliability/Unreliability," the advisory committee's note to the 2000 amendments also states what a court cannot consider. Specifically,

> [w]hen facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.[17]

Consequently, if determining "reliability" requires the court to decide which party's facts are more believable, then the court cannot exclude the expert but must leave it to the fact finder to

---

[16] *Id.* (stating additional factors that a court may consider, among others, in determining reliability of expert testimony); see also *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999) (stating that courts are given '"broad latitude' in deciding 'how to determine reliability and in making the 'ultimate reliability determination'" (citations omitted)).

[17] Fed. R. Evid. 702 advisory committee's note to 2000 amendment

determine the facts and how much weight to afford the expert's testimony based on that factual determination.

Relatedly, when expert opinion is based on the parties' competing views of the law, motions to exclude expert testimony under Fed. R. Evid. 702 are not the appropriate medium for resolving these legal disputes; that is what summary judgment and trial are for.[18] Indeed, not one of the factors for determining "reliability" listed in Rule 702 includes an evaluation of the parties' underlying legal arguments. Besides not being textually supported under Rule 702, the court cannot include the validity of the parties' legal arguments in determining reliability as a practical matter. By illustration, assume that two opposing experts' analyses are based on differing legal interpretations of the same contract. Further assume that the court rules as a matter of law that a plaintiff's interpretation of the contract is correct. Although both expert's opinions may be "reliable" under Rule 702 based on the rules of the experts' professional discipline, the opinion of the plaintiff's expert would be well taken, whereas the opinion of the defendant's expert would be subject to exclusion as irrelevant under Fed. R. Evid. 403. But if the court were to reach the opposite legal conclusion, then the opposite result would occur relating to the experts' opinions. Notice that the exclusion of one expert's opinion does not turn on whether the expert's opinion was "reliable" (i.e, whether the expert was qualified, applied the proper methods

---

[18] *Wells Fargo Bank, N.A. v. Stewart Title Guar. Co.*, No. 19-CV-285, 2020 WL 6451963, *3 (D. Utah. Nov. 3, 2020) (stating that "the court will not entertain summary judgment-esque arguments disguised as Daubert objections" (citing *Okla. ex rel. Doak v. Acrisure Bus. Outsourcing Servs., LLC*, 529 F. App'x 886, 896 (10th Cir. 2013)); *see also Sabal Trail Trans., LLC v. 0.589 Acres of Land in Hamilton Cty.*, No. 16-CV-277-JJ-BT, 2018 WL 3655556, at *7 (M.D. Fla. Aug. 2, 2018); *Kirksey v. Schindler Elevator Corp.*, No. CV 15-0115-WS-N, 2016 WL 5213928, at *3 (S.D. Ala. Sept. 21, 2016).

of his discipline, or reached a sound conclusion, among other things). Instead, exclusion turns on relevance stemming from the court's legal ruling, which may be a central issue in the entire lawsuit. Thus, the court will not decide the validity of the parties' genuinely disputed legal contentions when deciding whether expert evidence is "reliable" under Rule 702.

A N A L Y S I S

## I.   ATI'S MOTION TO EXCLUDE MR. HOFFMAN'S TESTIMONY IS GRANTED IN PART AND DENIED IN PART.

ATI raises three principal challenges to Mr. Hoffman's testimony. First, ATI claims that Mr. Hoffman's rebuttal report regarding whether ATI could establish EFM under the Agreement is untimely. Second, ATI asserts that Mr. Hoffman's opinion did not appropriately consider several qualitative assumptions in rendering his rebuttal opinion on EFM and his calculation of damages. Finally, ATI argues that Mr. Hoffman's alter ego opinion should be excluded because it is a legal opinion that is not helpful to the fact finder. Each argument is discussed below.

### A.   Mr. Hoffman's EFM Rebuttal Opinion Was Timely Disclosed.

The court declines to exclude Mr. Hoffman's EFM opinion because it was timely disclosed. However, because Mr. Hoffman's EFM opinion is a "rebuttal" opinion—and because USMG agreed at oral argument—Mr. Hoffman may not reference his EFM rebuttal opinion in USMG's case in chief unless ATI opens the door to that line of questioning during that phase of the trial. The timing of expert disclosures in this case is governed by the operative scheduling order. That scheduling order provides that the party who has the burden of proof must produce

its expert report by February 25, 2020.[19] USMG disclosed Mr. Hoffman's rebuttal EFM opinion

after February 25, 2020. Therefore, if USMG bore the burden of proof on the issue of EFM, then

Mr. Hoffman's opinion is untimely.

USMG does not bear the burden of proof on the EFM issue because EFM is an

affirmative defense.[20] As such, the party asserting the affirmative defense bears the burden of

proving it.[21] Notwithstanding, ATI argues that USMG bears the burden of proof because it

alleged in the complaint that ATI's EFM designation was a breaching act and, therefore, USMG

transformed EFM from an affirmative defense into an element of USMG's breach of contract

claim that it must prove during its case in chief.[22] ATI's argument is unavailing because to

establish a breach of contract, USMG need only prove that: (1) ATI had an obligation to perform

under the Agreement; (2) USMG performed its obligations under the Agreement, and ATI failed

to do so; and (3) USMG suffered damages as a result of ATI's failure to perform.[23] The elements

of breach of contract do not require the plaintiff to preemptively disprove all the possible

defenses that the breaching party may assert to excuse the purported breach. Instead, ATI bears

the burden of establishing its affirmative defense. Further, as the court pointed out at oral

---

[19] ECF No. 308.

[20] *Desert Power, LP v. Pub. Serv. Comm'n*, 2007 UT App 374, ¶14, 173 P.3d 218 (stating that party asserting force majeure would not be entitled to relief "unless it could prove that several factual conditions had been met").

[21] *Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1264 (10th Cir. 2008) (stating that burden of proof on a force majeure defense rests with party asserting the defense).

[22] ECF No. 318 at 15.

[23] *Elopulos v. McFarland & Hullinger, LLC*, 2006 UT App 352, ¶10, 145 P.3d 1157.

argument, if ATI never mentions EFM during the trial, then EFM will never become an issue. Thus, EFM is an affirmative defense that USMG does not bear the burden of disproving, and the post-February 25, 2020 submission of Mr. Hoffman's EFM rebuttal opinion is timely.

Although timely, Mr. Hoffman's EFM analysis is a rebuttal opinion and should not be shared during USMG's case in chief. As the parties agreed at oral argument, USMG will only elicit Mr. Hoffman's EFM opinion to rebut any affirmative defense of EFM that ATI presents in its case in chief unless ATI opens the door to that evidence during USMG's case in chief. Accordingly, ATI's motion on this point is granted in part and denied in part.

B. <u>Mr. Hoffman's Damages Calculation, Including the Discount Rate and EFM Opinions, Are Reliable</u>.

ATI challenges Mr. Hoffman's opinions on damages (including the discount rate) and whether ATI qualified for EFM because his opinions fail to "fit the facts" of this case.[24] The court first addresses ATI's objections to Mr. Hoffman's damages calculation followed by ATI's challenges to his EFM determination.

1. *ATI Fails to Show that Mr. Hoffman's Damages Calculation Is Unreliable*

ATI claims that Mr. Hoffman's damages calculation is unreliable because it: (1) includes more years than USMG will likely be in business; (2) applies an incorrect discount rate by ignoring business and market risks; and (3) assumes that ATI will pay top dollar for magnesium even though the market provides for much cheaper options. The court considers arguments (1) and (2) together because they are closely related and addresses argument (3) separately.

---

[24] ECF No. 318 at 16.

a. <u>Although Subject to Challenge, Mr. Hoffman's Damages
Assessment and Discount Rate Are Reliable</u>.

Referring the court's visual aid above, ATI's arguments, at best, show that Mr.

Hoffman's opinions are short of "correct" but not that his opinions are "unreliable." One of the

chief complaints that ATI has with Mr. Hoffman's analysis is that his damages assessment

extends too far into the future. This argument has both a factual and legal component. ATI

challenges Mr. Hoffman's opinion as a factual matter because he fails to consider whether

USMG will be in business for as long as Mr. Hoffman calculates damages. ATI also alleges that

Mr. Hoffman's temporally excessive damage period affects his discount rate calculation because

"future profits" is a variable in that equation.[25] Thus, ATI argues, Mr. Hoffman fails to

appropriately consider the "facts." Additionally, ATI argues that Mr. Hoffman's damages period

is too long as a matter of law. Therefore, ATI argues, his assessment of damages is unreliable.

The problem with ATI's factual argument is that Mr. Hoffman used two quantitative

analyses to consider future market and industry uncertainties, which his professional discipline

commends as an acceptable way to account for such uncertainties. In fact, Mr. Hoffman

recognizes that his damages calculation must consider market volatility on both a micro and

macro level.[26] To address these uncertainties, Mr. Hoffman relies on the "Expected Cash Flow

---

[25] A "discount rate" means "[a] rate of return used to convert a future monetary sum into present value." See Roman L. Weil, Daniel G. Lentz, Elizabeth A. Evans, *Litigation Services Handbook: The Role of the Financial Expert*, 395 (John Wiley & Sons, 2017) (hereinafter "*Litigation Services Handbook*"). Because a discount rate converts future dollars into present dollars, how far into the future one looks for money has an impact on the calculation of present-day value.

[26] ECF No. 320-4 at 19-20 of 47.

Approach" and the "Capital Markets Approach."[27] ATI does not provide any treatise, well-considered text, or other source relevant to the issue of evaluating economic damages to show that using quantitative methods to account for market volatility is improper.[28] To the contrary, using such quantitative methods to account for uncertainty in future profits appears to be acceptable within Mr. Hoffman's professional discipline. Therefore, his opinion is reliable.[29]

Even though Mr. Hoffman's opinion appears to be based on accepted methods within his profession, ATI claims that his analysis fails to sufficiently account for volatility at USMG and within the industry in which it operates. At best, however, ATI's argument shows that Mr. Hoffman's analysis falls short of "correct" and lingers near "shaky but admissible." But, as shown in the court's visual aid above, "shaky" is within the reliability zone and, therefore, is eligible for vigorous cross-examination and the presentation of contrary evidence, not exclusion under Rule 702. Therefore, ATI's factual challenges to Mr. Hoffman's opinion on damages and the discount rate are unavailing.

As a matter of law, ATI's argument fares no better. The period for which USMG may receive damages is a hotly contested legal issue for which both parties are armed with cases and

---

[27] ECF No. 320-4 at 20-22 of 47.

[28] Additionally, ATI complains that Mr. Hoffman should not have used the rate at which USMG can borrow money as a means of calculating "net present value" of future damages. However, ATI has not presented anything to the court showing that this is an unacceptable analytical factor in calculating damages. Based on the quantitative analysis that Mr. Hoffman has rendered, which appears to comport with the accepted methodology of Mr. Hoffman's profession, the court must conclude that any dispute over this component of Mr. Hoffman's analysis, at best, places his testimony somewhere around "shaky but admissible," which is subject to vigorous cross-examination the presentation of contrary evidence, not exclusion.

[29] *Litigation Services Handbook* at 359.

treatises that purportedly support their respective views. Accordingly, the court cannot decide that legal issue in the context of a Rule 702 motion because the correctness of a party's substantive legal analysis is not a factor of reliability; it is the stuff of summary judgment and, possibly, trial. Therefore, ATI's challenge to Mr. Hoffman's analysis as a matter of law is not contemplated under Rule 702. If ATI persuades Judge Nielson that USMG is not entitled to damages for the lengthy period that Mr. Hoffman analyzed, then ATI may seek to exclude Mr. Hoffman's testimony under Rule 403 for being irrelevant and confusing to the issues but not because Mr. Hoffman's opinion is "unreliable."

      b.   Mr. Hoffman's Assumptions Regarding ATI's Magnesium Purchases.

ATI's argument and USMG's counterarguments regarding Mr. Hoffman's assumptions as to how much ATI would pay for magnesium embody a legal dispute over the Agreement, not a challenge to reliability under Rule 702. ATI argues that the text of the Agreement allows ATI to purchase either molten or solid magnesium.[30] However, USMG claims that the course of dealing between the parties required ATI to purchase only molten magnesium. Again, Mr. Hoffman's ability to guess the correct legal interpretation of the Agreement is not a factor of "reliability" under Rule 702. It is a subject for summary judgment or trial and not for resolution on a motion to exclude expert testimony. Therefore, Mr. Hoffman's reliance on molten magnesium is not unreliable under Rule 702, but if Judge Nielson disagrees with USMG's reading of the Agreement, then Mr. Hoffman's opinion on this point may become irrelevant.

---

[30] ECF No. 329-1 at 10 of 50.

2. *Mr. Hoffman's EFM Opinion Is Reliable Albeit Subject to Challenge at Trial.*

ATI contends that Mr. Hoffman's opinion is unreliable because he relies on "large amounts of waste product" called "revert" to determine EFM and, again, assumes that the magnesium prices that ATI will pay are higher than historically probable.[31] Neither argument renders his opinion on EFM unreliable.

First, the court cannot find that Mr. Hoffman's use of revert renders his opinion unreliable because there is a factual dispute between the parties as to whether ATI relied on revert to reach its calculations and whether use of revert in those calculations is acceptable as matter of contractual interpretation. Because a motion under Rule 702 is not a forum to resolve either factual or legal disputes, the court cannot find that Mr. Hoffman's reliance on revert in his EFM calculation is unreliable.

Second, Mr. Hoffman's use of molten magnesium at high purchase prices does not render his opinion unreliable for the reasons stated above in section I.B.1.b. This issue is one of law and not reliability. Therefore, the court cannot resolve that issue here under the guise of a Rule 702 motion. Consequently, Mr. Hoffman's substantive opinions regarding damages and EFM are not excluded as "unreliable."

C. Mr. Hoffman's Opinion on Alter Ego Is Not Reliable Because It Is Unhelpful to the Trier of Fact.

ATI contends that Mr. Hoffman's alter ego opinion is unreliable because it is unhelpful to the fact finder. To be "reliable" under Rule 702, an expert's opinion must "help the trier of fact

---

[31] ECF No. 318 at 18.

to understand the evidence or to determine a fact in issue."[32] Because an expert's job is to help the *fact* finder understand and determine the *facts*, courts routinely exclude expert opinions that merely provide legal analysis because, after all, legal analysis is the court's job.[33] Indeed, as the advisory committee note to Fed. R. Evid. 704 provides, courts "stand at the ready to exclude opinions phrased in terms of inadequately explored legal criteria." Consequently, the Court of Appeals for the Tenth Circuit has stated that "an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts."[34]

By illustration, if an attorney in a trial over a contested will asks an expert, "Did the testator have the capacity to make a will?" then the answer to that question will be improper under Rule 702 because the expert would state a legal conclusion by applying the law to the facts. However, if the attorney asks an expert, "Based on your mental health evaluation of the testator, was she able to remember the nature and extent of her property?" then the expert will opine on facts to assist the trier of fact understand the evidence. The attorney could continue to

---

[32] Fed. R. Evid. 702(a).

[33] *See, e.g.*, *United States v. Brooks*, 81 Fed. R. Evid. Serv. 381 (E.D.N.Y. 2010) (stating that "courts specifically preclude the expert from offering either legal conclusions or opinions that apply corporate governance concepts to the case's specific facts"); *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346 (D. Del. 2006) (noting that experts may not testify regarding the substance of patent and contract law); *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1044 (D. Ariz. 2005) (holding that law professor's expert testimony regarding Maine law on "piercing the corporate veil" was an inadmissible legal opinion).

[34] *Okland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998).

ask questions about the expert's factual observations and opinions to elicit the necessary evidence to argue that the facts support the legal conclusions for which the attorney advocates.[35]

As USMG recognized at oral argument, Mr. Hoffman cannot opine whether ATI is the alter ego of Allegheny Technologies, Inc. because such testimony would merely provide a legal conclusion drawn by applying the facts to the law. However, Mr. Hoffman can testify regarding facts that are relevant to the alter ego issue and are within his expertise. For example, although Mr. Hoffman cannot render a legal conclusion that ATI was "undercapitalized," he could testify as to the capitalization for ATI based on his expert review and could opine whether the level of ATI's capitalization is adequate or low based on his experience. Therefore, Mr. Hoffman's legal conclusion that ATI is Allegheny's alter ego is unreliable because it is unhelpful to the fact finder. However, Mr. Hoffman can opine about facts that are disclosed in his reports and would allow USMG to argue in favor of a finding of alter ego during closing argument. Accordingly, on this point, ATI's motion is granted in part and denied in part.

## II.   USMG'S MOTION TO EXCLUDE THE REBUTTAL OPINION OF MR. NELSON IS DENIED.

USMG moves to exclude the rebuttal opinions of ATI's expert, Mr. Nelson, for three reasons. First, USMG argues that Mr. Nelson's reliance on qualitative analysis to criticize Mr. Hoffman's quantitative analysis of damages is unreliable because Mr. Nelson's qualitative risks are speculative. Second, USMG contends that Mr. Nelson should be precluded from testifying

---

[35] *See* David H. Kaye, David E. Bernstein, Andrew G. Ferguson, Maggie Wittlin, and Jennifer L. Mnookin, *The New Wigmore: Expert Evidence* § 2.3 (Aspen 3d ed. 2021); *cf Okland Oil*, 144 F.3d at 1327 n.22. 1328 (recognizing that expert opinion relating to facts that allow attorneys to argue in favor of a legal conclusion based on the expert testimony is proper).

about the adverse economic impact that USMG would have suffered had it reduced its magnesium prices to a degree that would have allowed ATI to avoid declaring EFM. Finally, USMG asserts that Mr. Nelson cannot criticize Mr. Hoffman for failing to calculate damages under the Agreement's "Interim Penalty Clause" because Judge Benson purportedly invalidated that argument as a matter of law. As shown in order below, none of these arguments show that Mr. Nelson's opinions are unreliable. Therefore, USMG's motion is denied.

A.   Qualitative Criticism of Mr. Hoffman's Calculations Is Not Unreliable.

Whereas Mr. Hoffman's damages calculation relies on *quantitative* methods to account for uncertainty in future profits, Mr. Nelson cites several *qualitative* risks to USMG's future profits that he contends Mr. Hoffman failed to consider. Although USMG contends that raising these qualitative factors is speculative, it has failed to provide any authority showing its impropriety among experts of Messrs. Hoffman and Nelson's professional discipline. In fact, at least one treatise on calculating economic damages states that consideration of qualitative factors is an important part of evaluating economic damages.[36] This treatise further provides that relevant qualitative factors include, among other things, "risks associated with operating and investing in the business . . . supplier reliability . . . industry trends, and competitive position."[37]

Mr. Nelson's critiques of Mr. Hoffman's valuation align with these qualitative factors. For instance, Mr. Nelson devotes a great deal of discussion to USMG's ability to remain

---

[36] *Litigation Service Handbook* at 368 (stating that even though valuation models primarily consist of quantitative elements, valuation "also requires inputs that involve qualitative analysis and judgment").

[37] *Id.*

operational and competitive in the magnesium market. This discussion clearly touches on the risks associated with USMG's continued operation, industry trends, and USMG's competitive position in that market.[38] Mr. Hoffman also cites other geopolitical and economic risks, which implicate industry trends and supplier reliability. This analysis is relevant to proving ATI's legal arguments that Mr. Hoffman's damages calculation includes too many years because USMG may not be around long enough to incur damages for the years that it alleges. Therefore, Mr. Nelson's qualitative critiques of Mr. Hoffman's chiefly quantitative work are not "unreliable" because Mr. Nelson's critiques are consistent with the accepted practices of his professional discipline and can be vigorously cross-examined at trial.[39]

---

[38] USMG contends that Mr. Nelson's opinion about USMG's survival as a company is irrelevant as to damages because the law does not countenance such a concern in determining damages. Not surprisingly, ATI contends that USMG's survival is relevant for calculating damages. However, this debate is not helpful in the context of determining the reliability of Mr. Nelson's opinion under Rule 702 because whether USMG's continued survival is relevant to damages is just that: a question of *relevance* under Rule 403 and not reliability under Rule 702. The court will not decide legal issues under the guise of a Rule 702 motion. If Judge Nielson rules that USMG's longevity in the corporate world is irrelevant as a matter of law, USMG can move to exclude Mr. Nelson's opinion under Rule 403.

[39] In criticizing Mr. Nelson's opinion, USMG complains that Mr. Nelson has never calculated a discount rate himself and did not calculate one here. However, this argument does not require exclusion of Mr. Nelson's opinions because organically calculating a discount rate is not the role that Mr. Nelson is fulfilling in this litigation. Fed. R. Civ. P. 26(a)(2)(D)(ii) recognizes a special category of expert witnesses whose function is simply to contradict the work of other experts. USMG does not cite any authority—and the court cannot find any—requiring a rebuttal expert to engage in his/her own organic analysis or do more than point out flaws in another expert's work. *Mahaska Bottling Co. v. Pepsico, Inc.*, 441 F.Supp. 3d 745, 759 (S.D. Iowa 2019) (stating that "[i]t is the proper role of rebuttal experts to critique plaintiffs' experts' methodologies and point out potential flaws in the plaintiffs' reports"). Therefore, this argument fails to push Mr. Nelson's opinions into the realm of "unreliable."

B.  <u>USMG's Challenge to Mr. Nelson's EFM-Avoidance Opinion Requires Legal
Rulings on Central Issues in this Action.</u>

Mr. Nelson opines that if USMG would have reduced its magnesium prices so that ATI

could have avoided EFM, then USMG would have lost money, and, therefore, ATI's declaration

of EFM was unavoidable under the Agreement. USMG contends that this opinion should be

excluded from trial because it lacks foundation and fails to consider that ATI materially breached

the Agreement[40] by, among other things, "not properly invoke[ing] the EFM clause."[41] Neither

reason shows that Mr. Nelson's opinion is unreliable.

First, USMG's foundation challenge is not well taken because relying on another expert's

work to form an opinion in the same case is proper. "Of course, as a general matter, there is

nothing objectionable about an expert relying upon the work [of] a colleague."[42] USMG

concedes that Mr. Nelson obtained the foundation for this challenged opinion from ATI's other

expert, Mr. Stanton. Relying on the opinion of another expert as a basis for forming opinions is

an accepted litigation practice that is expressly allowed under Fed. R. Evid. 703, which allows an

expert to rely on evidence "that the expert has been made aware of . . . ." Mr. Nelson's reliance

on Mr. Stanton's work does not push Mr. Nelson's testimony into the realm of unreliable.

Second, USMG's contentions that Mr. Nelson did not consider ATI's alleged breach of

contract and failure to properly invoke EFM would require the court to decide the central legal

---

[40] ECF No. 327 at 18.

[41] ECF No. 327 at 19 (emphasis deleted).

[42] *See, e.g.*, *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017) (citations
omitted).

issues in this action to determine whether to exclude Mr. Hoffman's opinion. Deciding these crucial legal issues as a prerequisite to determining "reliability" is improper in the context of Rule 702 motions. Therefore, the court declines to exclude Mr. Nelson's challenged opinion.

        C.   <u>Judge Benson Did Not Preclude Consideration of the Interim Penalty Clause</u>.

USMG's final challenge to Mr. Nelson's testimony is that he relied upon the Agreement's Interim Penalty Clause in reaching his opinions even though Judge Benson had previously proscribed that line of reasoning from consideration. USMG argues that under the law of the case, Mr. Nelson's opinion on this point is no longer relevant. Although USMG's objection is predicated on relevance under Fed. R. Evid. 403—instead of reliability under Rule 702—the court declines to exclude Mr. Nelson's opinion because the law of the case does not apply here.

Even though the parties debate whether the law of the case doctrine applies to non-dispositive orders, such debate is a red herring because the parties agree that, at a minimum, there must be an actual court order.[43] Judicial skepticism expressed at oral argument does not an order make. During oral argument on the parties' prior summary judgment motions, Judge Benson expressed skepticism about the viability the Interim Penalty Clause claim, but he never

---

[43] *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("[E]very <u>order</u> short of a final decree is subject to reopening at the discretion of the district judge." (citation and quotations omitted, emphasis added)); *Raiser v. Utah Cnty.*, No. 02-CV-1209, 2008 WL 477804, *1 (D. Utah Oct. 31, 2008) (unpublished) ("It is within the court's discretion to reconsider a previous <u>order</u> . . . ." (emphasis added)).

issued an oral or written order precluding its future use.[44] Therefore, Mr. Nelson's opinion on this subject is not precluded by a prior order.

### III.     USMG'S CHALLENGE TO MR STANTON'S OPINIONS IS DENIED.

USMG seeks to exclude Mr. Stanton's opinion regarding EFM for three reasons. First, USMG contends that Mr. Stanton failed to properly determine variable costs. Second, USMG argues that Mr. Stanton's opinion contradicts ATI's discovery responses and, therefore, should be excluded. Finally, USMG contends that ATI failed to timely disclose information on which Mr. Stanton relied to form his EFM opinions. Each contention is discussed in order below.

#### A.   Mr. Stanton's Calculation of Variable Costs Is Reliable.

USMG's argument regarding variable costs arises from the Agreement's provision that ATI can only declare EFM if, among other things, ATI is able to purchase "titanium sponge for a period of at least five (5) consecutive years at a price . . . at or below eighty-five percent (85%) of its variable costs to produce titanium sponge . . . ."[45] Thus, to justify a declaration of EFM, ATI's calculation of its variable costs is essential.

However, the Agreement neither defines the term "variable costs" nor provides the factors that ATI should consider when evaluating them. Because the Agreement is silent on the meaning of "variable costs," Mr. Stanton applied his own definition of "variable costs," and, based on that definition, calculated which costs to ATI were "variable" and which were "fixed." Mr. Stanton aided his variable cost calculation by introducing two terms that he contends are

---

[44] ECF No. 60 at 95-96 (hearing transcript); ECF No. 49 (written order following oral argument).

[45] ECF No. 329-1 at 26.

constituent parts of variable costs: "linear variable costs" ("LVCs") and "non-linear variable costs" ("NLVCs"). After categorizing costs according to LVCs and NLVCs, Mr. Stanton calculated variable costs and concluded that ATI could claim EFM because ATI could purchase titanium sponge for 85% of its production costs for the time required in the Agreement.

USMG contends that Mr. Stanton's reliance on LVCs and NLVCs is unreliable because the Agreement speaks only about "variable costs," and, therefore, because Mr. Stanton considered LVCs and NLVCs, he relied on improper factors to reach his EFM conclusion. Instead of arguing that the use of LVCs and NLVCs is inconsistent with accepted accounting practices when calculating variable costs, USMG instead contends that Mr. Stanton misinterpreted the Agreement as a matter of law. Once again, the application of what USMG deems to be a "correct" legal interpretation of a contract is not a factor in Rule 702 to determine reliability. Thus, the question under Rule 702 is not whether Mr. Stanton correctly interpreted the law but whether his methods and application of those methods are acceptable under the rules of his discipline (i.e., accounting). Unfortunately, USMG fails to provide any authority showing that reliance on LVCs and NLVCs violates accepted accounting principles and practices when determining variable costs.

In evaluating Mr. Stanton's opinion, the court cannot find that his reliance on LVCs and NLVCs is unreliable. Mr. Stanton defines "fixed costs" as "[a] cost that does not change as output changes" and "variable cost" as a cost "that increases in total with an increase in output and decreases in total with a decrease in output."[46] Mr. Stanton did not invent those definitions;

---

[46] ECF No. 329-9 at 10 (citations and quotations omitted).

he quoted them from a well-established accounting publication entitled *Cornerstones of Cost Management*.[47] Additionally, his definition of "linear variable costs" is in accordance with well-accepted accounting practices, which recognize that when costs increase in proportion to the increase of production, the variable cost is "linear."[48] Conversely, when a variable cost increases with production but not in direct proportion thereto, then the variable cost is "non-linear."[49] Thus, using "linear variable costs" and "nonlinear variable costs" is a well-accepted accounting practice to more granularly delineate "variable costs." Accordingly, Mr. Stanton's use of these two concepts does not render his opinion "unreliable."

Moreover, USMG's failure to provide any authority as to what is and is not reliable in the discipline of accounting for classifying LVCs and NLVCs is significant. USMG contends that putting variable costs into each category is "subjective" and, therefore, unreliable because the jury will be left to speculate why Mr. Stanton declared one variable cost "linear" but another "non-linear."[50] Not so. Upon being introduced to Mr. Stanton's cost categories and his explanation for why he categorized individual costs the way he did, the fact finder can apply the definitions of each category to each cost and, after having the benefit of cross-examination and

---

[47] Roy R. Hansen, Maryanne C. Mowen, *Cornerstones of Cost Management*, 77 (Boston 4th ed. 2018); *see also* Geoff Turner, *Effective Financial Management: The Cornerstone for Success*, 40 (Business Expert Press 2011).

[48] Lane K. Anderson, Harold M. Sollenberger, *Managerial Accounting*, 760 (1982) (hereinafter "*Managerial Accounting*"); *see also Management Accounting*, https://e-catalyst.net/content/textbooks/management_accounting/en/3_estimation/children-3-2-cost_behaviors/children-3-2-1-linear/ (last visited Feb. 13, 2021).

[49] *Managerial Accounting* at 772; *see also* Hasaan Fazal*, What is a non-linear variable cost?*, https://pakaccountants.com/what-is-a- non-linear-variable-cost/ (last visited Feb. 13, 2021).
[50] ECF No. 327 at 24.

contrary evidence from Mr. Hoffman, can give whatever weight to Mr. Stanton it deems appropriate. Therefore, USMG has failed to show that Mr. Stanton's calculation of variable costs is unreliable.

B.   ATI'S Discovery Reponses Do Not Preclude Mr. Stanton's EFM Opinion.

USMG uses Rule 702 for a purpose for which it was never intended: ensuring consistency with previous discovery responses. Specifically, USMG argues that ATI's response to a Request for Admission during discovery precludes Mr. Stanton from providing his own independent analysis of EFM. However, conspicuously absent from Rule 702's factors to ascertain reliability is the extent to which the expert's opinion squares with the party's discovery responses. Consistency with a party's discovery responses simply has no relevance as to whether an expert's analysis is "reliable" under the factors provided in Rule 702. If anything, estopping an expert from testifying contrary to a party's discovery response is the stuff of the Rules of Civil Procedure and, possibly, Fed. R. Evid. 403, not Rule 702. Nevertheless, the parties have briefed and argued this matter in the context of their Rule 702 memoranda. Accordingly, even though the court will not rely on Rule 702 here, it will rule on this issue because it is part of the motion that Judge Nielson referred, is ripe, and is unlikely to prejudice Judge Nielson's ability to rule on the parties' pending motions for summary judgment.

To determine whether Mr. Stanton's EFM opinion is admissible, the court will consider the impact of ATI's responses to certain Requests for Admission under Fed. R. Civ. P. 36. In so doing, the court assumes—without deciding—that a party's responses to Requests for Admission can limit the sources of information that its expert can consider when rendering an opinion.

24

Rule 36 governs Requests for Admission and provides that "[a] matter admitted under this rule is conclusively established" unless the court rules otherwise.[51] If a matter is not admitted, then the "answer must specifically deny [the request for admission] or state in detail why the answering party cannot truthfully admit or deny it."[52] When considering a response to a Request to Admit, the court must consider the "phraseology of the requests as carefully as that of the answers or objection."[53] USMG's Request for Admission and ATI's response were:

**REQUEST FOR ADMISSION NO. 1:** With respect to the document identified by Bates number ATI_00000290, admit that the document is a true and correct copy of ATI's allocation of fixed or variable costs for purposes of its declaration of Economic Force Majeure.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:** Denied, in part. The document labeled ATI_00000290 is a listing of the chart of accounts that is used by both ATI and Allegheny Technologies Incorporated ("Allegheny") to allocate fixed and variable costs on the companies' general ledgers. The chart of accounts is embedded within the companies' electronic accounting management system and is used in the ordinary course of business for all budgeting and accounting purposes; it was not specifically created to analyze ATI's declaration of an economic force majeure.

The document marked ATI_00000290 represents the framework that ATI utilizes to track some of the fixed and variable costs associated with production of titanium sponge in the ordinary course of business. There are, however, additional variable costs (most notably, the costs of raw materials, including titanium tetrachloride, magnesium, and argon) that are not represented on this general ledger form. Please see ATI's response to Interrogatory No. 2 of US Mag's First Set of Interrogatories for additional discussion of this document.

A common-sense reading of USMG's Request for Admission No. 1 seeks an answer that both authenticates a document bearing Bates number ATI-00000290 and admits that ATI's fixed

---

[51] Fed. R. Civ. P. 36(b).

[52] Fed. R. Civ. P. 36(a)(4).

[53] *Thalheim v. Eberheim*, 124 F.R.D. 34, 36 (D. Conn. 1988).

and variable costs for purposes of EFM are contained in that authenticated document. However, nowhere in the Request does USMG seek an admission that the document is the sole or exclusive source of information from which ATI calculates its fixed and variable costs for purposes of declaring EFM. Even though Request for Admission No. 1 does not seek an admission relating to the exclusivity of ATI-00000290 for determining variable costs, ATI apparently sensed that the Request was seeking such information. Consequently, ATI denied the Request in part by explaining that although the variable costs listed in the document are used "in the ordinary course of business for all budgeting and accounting purposes," ATI also relies on additional materials that track "additional variable costs . . . that are not represented on [ATI-00000290]". Thus, USMG's request does not directly ask whether ATI-00000290 is the exclusive source of financial information to calculate EFM, and ATI does not pigeonhole itself to the exclusive use of ATI-00000290 to calculate its variable costs for EFM purposes. Accordingly, Request for Admission No. 1 cannot conclusively bind ATI to ATI-00000290 as the exclusive source of variable costs for its EFM determination. Therefore, even assuming *arguendo* that a Request for Admission can limit the universe of documents that an independent expert can consider when rendering an expert opinion, ATI is not exclusively bound to ATI-00000290 as a source of its variable costs, and nothing precludes Mr. Stanton from considering other costs that may not be listed in ATI-00000290 to reach his independent analysis of EFM. USMG's attempt to exclude Mr. Stanton's opinion under the auspices of Fed. R. Civ. P. 36 fails.

C. <u>ATI Did Not Transgress Its Expert Disclosure Obligations Relating to Mr. Stanton</u>.

USMG contends that Mr. Stanton's opinion should be excluded because he relied on information that was not timely disclosed to USMG. Once again, this objection to Mr. Stanton's testimony is foreign to Fed. R. Evid. 702. Rule 702's reliability criteria does not include the production of documents as a reliability factor. Instead of Rule 702, Fed. R. Civ. P. 37(c)(1) provides the consequences for failing to disclose information. Specifically, Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness" in any subsequent proceeding.[54] Thus, instead of relying on Fed. R. Evid. 702 to exclude Mr. Stanton's testimony, USMG must first establish a failure to comply with Fed. R. Civ. P. 26(a) or (e). As shown below, USMG cannot do either.

1. *USMG Cannot Establish a Failure to Disclose Under Fed. R. Civ. P. 26(a).*

USMG's attempt to exclude Mr. Stanton's testimony under Rule 37 fails because it cannot show a violation of Fed. R. Civ. P. 26(a). Fed. R. Civ. P. 26(a)(2)(B) requires Mr. Stanton to produce a report. That report must include, among other things, "the facts or data considered by the witness" in forming his opinions.[55] The Advisory Committee explains that "'facts or data' is meant to limit the disclosure to material of a factual nature."[56] The Committee further states that "facts or data" are to be interpreted broadly to require disclosure of any material considered

---

[54] Fed. R. Civ. P. 37(c)(1).

[55] Fed R. Civ. P. 26(a)(2)(B)(iii).

[56] Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment subdivision (a)(2)(B).

by the expert . . . that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert . . . ."[57] Although Mr. Stanton's report must *disclose* the facts or data he considered, Rule 26 does not require him to *produce* the documents containing that factual material lest his report become so large and cumbersome that it is rendered useless.

By illustration, assume that Mr. Stanton considered 5,000 pages of company spreadsheets in reaching his opinion. Rule 26(a)(2)(B) does not require him to produce (i.e., attach) those 5,000 spreadsheet pages to his report; it only requires him to disclose in the report that he obtained facts and data from company spreadsheets. If Mr. Stanton were to rely on any of the spreadsheets as a supporting exhibit to his report, Rule 26 requires him to attach those exhibits to the report.[58] However, Rule 26 does not require that he automatically produce all documents that he considered. If USMG wants all the documents that Mr. Stanton considered, then USMG can rely on Fed. R. Civ. P. 45, among other mechanisms, to obtain them.[59]

However, USMG fails to point to any "facts or data" that Mr. Stanton failed to disclose in his report. Instead, USMG claims that ATI did not disclose any "documents concerning 2017

---

[57] *Id.*

[58] Fed. R. Civ. P. 26(a)(2)(B)(iii).

[59] The authority that USMG cites in support of its argument alleging failure to disclose does not contradict the court's analysis as to Rule 26(a)(2)(B)'s requirements. For example, in *Icon-IP Pty Ltd. v. Specialized Bicycle Component, Inc.*, 87 F.Supp.3d 928, 949 (N.D. Cal. 2015), the court excluded expert testimony under Rule 26 because the expert's report failed to disclose that he had relied on telephone conversations to render his opinions. The court precluded the expert from relying on the information gleaned from those telephone calls at trial. *Id.* However, the court did not hold that the expert had to produce recordings or notes of those telephone conversations under Rule 26.

expenses for the titanium plant . . . during *fact discovery*."[60] Thus, USMG's argument to exclude

Mr. Stanton's testimony is actually based on *ATI's* alleged failure to produce fact discovery, not

on *Mr. Stanton's* failure to disclose "facts and data" in his report. Accordingly, USMG has failed

to show that Mr. Stanton failed to disclose facts or data in his report and, therefore, violated his

disclosure obligations under Rule 26(a).

### 2.  USMG Cannot Establish a Violation of Rule 26(e).

By arguing that ATI failed to provide certain documents in fact discovery after Mr.

Stanton relied on them, USMG appears to argue that ATI violated Fed. R. Civ. P. 26(e). Rule

26(e) provides that a party must supplement its Rule 26(a) disclosures and any discovery

responses it made during fact discovery when certain conditions are met.[61] However, USMG has

not provided any fact discovery request that it claims ATI failed to appropriately supplement.

Therefore, the court cannot evaluate whether ATI failed to comply with Rule 26(e). Because the

court has no evidence of a violation of either Rule 26(a) or (e), it cannot exclude Mr. Stanton's

opinion under Rule 37(c)(1). Consequently, USMG's attempt to exclude Mr. Stanton's testimony

under either Fed. R. Evid. 702 or Fed R. Civ. P. 37(c)(1) fails.

### ORDER

For the reasons stated above, IT IS HEREBY ORDERED that:

1.      ATI's Motion to Exclude Mr. Hoffman[62] is GRANTED IN PART and DENIED

---

[60] ECF No. 327 at 22 (emphasis added).

[61] Fed. R. Civ. P. 26(e).

[62] ECF No. 318.

IN PART;

2.      USMG's Motion to Exclude Mr. Nelson[63] is DENIED; and

3.      USMG's Motion to Exclude Mr. Stanton[64] is DENIED.

        DATED this 17th day of February 2021.

                                BY THE COURT:

                                JARED C. BENNETT
                                United States Magistrate Judge

---

[63] ECF No. 333.

[64] ECF No. 327.